**AGRICULTURAL INS. CO. OF WATERTOWN, N. Y., v. OWENS.**

(Court of Civil Appeals of Texas. Dec. 17, 1910.)

1. INSURANCE (§ 323*) — FIRE INSURANCE — OCCUPANCY OF DWELLING—"VACANT."

Where, after the tenant of an insured house moved out, another person moved in at the request of the owner, so as to preserve the

insurance, had all his effects in the house, with control of the premises, and was corporally present and in actual possession of the premises every night during most of the time between departure of the tenant and the destruction of the house by fire, which was about a month, and was not absent from the place during that time for more than four days, the house was occupied, within a provision of the policy that the insurance should only continue while the premises were occupied by a tenant as a private dwelling house, and that the entire policy, unless otherwise provided, should be void if the building, whether intended for occupancy by the owner or tenant, should remain vacant or unoccupied for 10 days, and the fact that only one of the rooms in the house had been used by the occupant, and that the other rooms were not furnished, did not render the house vacant within the policy; the word "vacant" meaning "empty" in its ordinary sense.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 764–779; Dec. Dig. § 323.*

For other definitions, see Words and Phrases, vol. 8, pp. 7254–7259; vol. 8, p. 7826.]

2. INSURANCE (§ 665*)—FIRE INSURANCE—ACTION ON POLICY — SUFFICIENCY OF EVIDENCE.

In an action on a fire policy, evidence as to occupancy of the premises at the time of the fire *held* not contradictory, so as to raise an issue of the breach of a warranty relating thereto.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 665.*]

Appeal from Waller County Court; J. D. Harvey, Judge.

Action by Lance Owens against the Agricultural Insurance Company of Watertown, New York. Judgment for plaintiff, and defendant appeals. Affirmed.

Crane & Crane, for appellant. A. G. Lipscomb and W. J. Poole, for appellee.

PLEASANTS, C. J. This suit was brought by appellee against the appellant to recover upon a policy of fire insurance in the sum of $650, issued to him by appellant insuring a dwelling house belonging to appellee and situated in the town of Hempstead, Tex. The trial in the court below was with a jury, and after hearing the evidence the trial judge instructed the jury to return a verdict in favor of plaintiff, which was done, and judgment rendered accordingly.

The only question raised upon this appeal is whether the evidence raised the issue of the breach by appellee of the warranties contained in the policy, that the insurance should only continue while the insured premises were "occupied by a tenant as a private dwelling house," and that the "entire policy, unless otherwise provided by agreement indorsed thereon or added thereto, shall be void if the building herein described, whether intended for occupancy by the owner or tenant, be or become vacant or unoccupied and so remain for 10 days." There were no other agreements as to the occupancy of the premises indorsed on or added to the policy, and none were made by the parties.

The evidence upon the question of occupancy is as follows: At the time the policy of insurance was issued the insured property was occupied as a dwelling by Joe Edwards, a tenant of appellee, and he had so occupied it for about three years. The policy was issued on June 9, 1908, and the property was destroyed by fire on March 5, 1909. Will Taylor, a witness for plaintiff, testified: "On the night of March 5, 1909, I was in the town of Hempstead, Tex., where I resided. I know that Lance Owens owned a residence in Hempstead and where it was situated. Joe Edwards was living in the house and on the 6th day of February, 1909, he moved out and I occupied it after Edwards moved out. About two days after Joe Edwards moved out of the house, I moved into and occupied it. The way I happened to know when Edwards moved out was because I saw him moving out of the house. I moved into the house at the request of Lance Owens. I was occupying the house at the time it was burned down. Mr. Owens requested me to occupy the house by letter. I have in some way misplaced the letter. I have looked through all my things for it, but cannot at present find it. After I moved into the house, I was absent from Hempstead about four days. About the 15th of February, 1909, Mr. Owens, who is my brother-in-law, wrote me to go to Smithville, and stay with my sister while he came over to Hempstead to made some arrangements about renting out the house. As before stated, I was absent at my sister's about four days, when I returned. I continued to occupy the house until it was burned down. On the night that the house was destroyed by fire I was at Mr. John Glass's home, just across the street from it. I was playing high five with the family and had been absent from the house about two hours or more."

On cross-examination the witness testified as follows: "I have been railroading for about 10 years. Of course, during this time I was out of a job, like other railroad men, for short intervals. Before I began to railroad I farmed. During the months of January, February, and March, 1909, I was living in Smithville and Hempstead. Part of the time I was railroading and part of the time I was out of a job. At the time Mr. Owens wrote me with reference to occupying the house, I was living in Hempstead. All that Mr. Owens wrote me was to occupy the house and protect his property until he could make arrangements to rent it out. At the time I received the letter I slept and took my meals at Mr. John Glass's house, and during the time I occupied the house that burned I continued to take my meals at John Glass's. Nothing was said by Mr. Owens to the effect that I should stay in the place all during the day, and all during the night. I simply occupied the house for Mr. Owens at his request. I do not know the exact numbers of days or weeks that I remained in the

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

house. After I moved into it I occupied it until it burned down. I simply remember that it was two days after Mr. Edwards moved out before I moved into the house. There was nothing at all in the house after Mr. Edwards moved until I moved in. When I moved in the house I carried my bedclothes, quilts, pillows, and my own clothes. I procured the bedclothes from Mr. John' Glass's home, where I had been staying. I slept in said house every night, except when I was in Smithville, as above mentioned, and I would retire at different times at night, ranging from 8 to 11 o'clock. I had no room or residence at any other place during the time that I occupied the house that burned. During the time aforesaid I took my meals at Mr. John Glass's house across the street. My wearing apparel was at the place where I slept, as I have hereinbefore stated. I am a single man."

In answer to the question what he meant by "occupying the house," witness stated: "I was living there as my residence, having all my belongings there with me. Mr. Owens paid me nothing for staying at the house, and I paid him nothing for staying there. I was to occupy the house until Mr. Owens made arrangements to rent it. It is not a fact that Mr. Owens requested me to stay at the house as much as I could, and make frequent visits to same and look after the house generally for him, so that in case of the house's burning his insurance would be protected. I was requested to do so to protect the property. I did not know the house was insured at the time the house burned. The following articles were in the house: Two quilts, a sheet and pillow belonging to Miss Emma Glass, a bedstead, mattress, table, lamp and a washpan belonging to Mr. Owens, and a coat, pants, some underwear, and some shoes belonging to me. All of this property that I have described was in the south room. The fire which destroyed the house occurred at about 9 o'clock or 9:30 o'clock, p. m. I had been absent therefrom about two hours when we discovered the fire."

This testimony as to the occupancy of the premises by Taylor and the time and duration of such occupancy, and the date on which Edwards moved out of the house, is corroborated by several other witnesses introduced by the plaintiff.

The only testimony in the case which appellant contends tends to contradict this evidence is that of the witness Blassingame, which is as follows: "I have resided in Hempstead for 34 years. I am a car inspector for the Houston & Texas Central Railroad. My duties of inspecting cars require me to be moving up and down the railroad's right of way along in front of the place where Lance Owens' house was situated. I was on duty during February and March, 1909, and my duties required me to work at night. Each night I passed by Lance Owens' house several times. I never observed a light in the house at all until two or three nights before the fire. On the night that the fire occurred I saw Will Taylor and a tall man whom I did not know come out of the house belonging to Lance Owens and which was covered by the policy in suit. About 10 or 15 minutes after I saw them come out of the house, the fire which destroyed the house occurred."

Under appropriate assignments appellant contends, first, that the occupancy of the premises shown by the testimony of the witness Taylor was not the kind of occupancy required by the policy; and, second, that in view of the testimony of the witness Blassingame, the court was not authorized to assume that the testimony of Taylor and the other witnesses for plaintiff as to Taylor's occupancy of the premises was true.

We think neither of these contentions is sound. The facts testified to by Taylor show unquestionably that the house was occupied by him in the sense in which that term is generally used and understood. He was corporeally present and in actual possession of the premises every night during most of the time between the time that Edwards and his family moved out and the time of the fire, and his absence from the place did not exceed in duration more than four days. During all of this time he was in control of the premises and had all of his effects therein. It is also shown that his occupancy was under contract with or request of appellee, and he was therefore a tenant or holder under appellee. The fact that he only used one of the rooms in the house and that the other rooms were not furnished did not make the place vacant, as that term is used in the policy. The ordinary meaning of the word "vacant" is "empty," and a house partially furnished and actually occupied by a tenant who sleeps in the furnished or partly furnished room cannot be said to be vacant nor unoccupied. Ins. Co. v. Kempner, 87 Tex. 236, 27 S. W. 122, 47 Am. St. Rep. 99; 19 Cyc., pp. 730 and 731, and cases there cited.

The testimony of Blassingame does not contradict the testimony of Taylor as to his occupancy of the premises. The fact that Blassingame passed the house several times each night during the time Taylor claimed to have occupied it and did not observe any light therein until a few nights before the fire is not sufficient to raise an issue as to Taylor's occupancy, especially as the latter testified that he used a light very little, as he did not go to the house until he was ready to go to bed.

We think the judgment of the court below should be affirmed, and it has been so ordered.

Affirmed.